UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD C. JOHNSON, JR. | ) | CASE NO.  1:13CV1077 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Edward C. Johnson, Jr. Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  The Plaintiff asserts that the two Administrative Law Judges (ALJS) erred in their June 3, 2010 and June 9, 2011 decisions in finding that Plaintiff was not disabled because he could perform a significant number of jobs in the economy (Tr. 53-54).  The Court finds that substantial evidence supports the ALJs' decision for the following reasons:

**I.**     **PROCEDURAL HISTORY**

This is an action under 42 U.S.C. Section 405(g) to review the decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI) under Tiles II and XVI of the Social Security Act (Act), 42 U.S.C. Sections 401-433.

1

Plaintiff filed for DIB and SSI on October 5, 2006, alleging disability since November 21, 2005, due to a right shoulder sprain and contusion of the scapula (Tr. 296, 301, 337). The state disability determination agency denied Plaintiff's claims at the initial level of administrative review on January 3, 2007 and at the reconsideration level of administrative review on February 23, 2007 (Tr. 203-208, 215-220). On November 16, 2007, Plaintiff filed a request for an ALJ hearing on the state agency denial of benefits, explaining that his request for hearing was late because his apartment number was not included in the address (Tr. 221-222, 224, 226-227). On February 27, 2008, ALJ Morley White dismissed Plaintiff's request for a hearing because it was untimely (Tr. 176-177). On March 24, 2008, Plaintiff asked the agency's Appeals Council to review the dismissal of his claim (Tr. 229, 231-234). On April 25, 2008, the Appeals Council remanded the case to an ALJ, on the grounds that it had been improperly dismissed (Tr. 180-181).

On June 4, 2009, ALJ White issued a notice of hearing to Plaintiff, setting an administrative hearing for August 18, 2009 (Tr. 240-244). On July 24, 2009, Plaintiff's representative informed ALJ White that Plaintiff had obtained representation, and requested that the hearing be continued until at least November 2009 (Tr. 256-257). ALJ Thomas Ciccolini then scheduled a hearing on Plaintiff's claim for April 14, 2010 (Tr. 259).

On April 14, 2010, ALJ Ciccolini held the hearing, at which Plaintiff, who was represented, and a vocational expert testified (Tr. 122-169). At the hearing, the ALJ stated that he would leave the record open for additional evidence, and would entertain subpoenaing the evidence if Plaintiff's representative could not obtain it (Tr. 167-169). On June 3, 2010, ALJ Ciccolini issued an unfavorable decision on Plaintiff's claims (Tr. 185-193). On June 15, 2010, Plaintiff's representative requested that the ALJ vacate the decision (Tr. 202). On June 16, 2010, in response to the request of

Plaintiff's representative, ALJ Ciccolini vacated the June 3, 2010 decision, and reinstated Plaintiff's request for a hearing (Tr. 202).

On May 2, 2011, a different ALJ, Dennis LeBlanc, held another administrative hearing on Plaintiff's claim (Tr. 65-121). At the hearing, Plaintiff, who was represented, and a vocational expert testified (Tr. 72-120). On June 9, 2011, the ALJ issued a decision, in which he found that Plaintiff was not disabled at any time prior to the date of his decision (Tr. 55).

Plaintiff sent the Appeals Council a letter dated August 9, 2011, requesting to appeal the ALJ's decision (Tr. 15-27). On December 13, 2012, the Appeals Council sent Plaintiff a letter, indicating that Plaintiff's request for review was filed late, and asking Plaintiff to send a statement explaining why the statement was late and/or when the ALJ's decision was received (Tr. 11).

On March 5, 2013, the Appeals Council issued a notice, indicating that it had denied Plaintiff's request to review the ALJ's decision because it found no reason under the agency's rules to review the decision (Tr. 3). In declining to grant Plaintiff's request for review, the Appeals Council considered the reasons that Plaintiff disagreed with the decision (Tr. 3). The Appeals Council explained that it considered whether the ALJ's findings or conclusions were contrary to the weight of the evidence of record (Tr. 6). The Appeals Council also considered additional evidence that Plaintiff had submitted to it (Tr. 6, 8-10). Plaintiff then filed this civil action, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. Section 405(g). The Appeals Council's notice explained that Plaintiff had sixty days to file a civil action for review of the ALJ's decision, and that the Appeals Council would assume Plaintiff had received the letter five days after its date (Tr. 4).

Plaintiff filed a complaint on May 10, 2013 in Federal Court, challenging his denial of benefits (Dkt. No. 1). Based on Plaintiff's representation in the complaint that he did not receive notice of the Appeals Council's action until March 12, 2013 (Dkt. No. 1 at 1), the Appeals Council extended the

3

time within which Plaintiff could commence a civil action in District Court (Tr. 1).

## II.    STATEMENT OF FACTS

Plaintiff has a high school education, some college, and past work as a cook, custodian, radio dispatcher, and security person (Tr. 343, 347, 370, 381). During the relevant period, Plaintiff was enrolled in college (Tr. 384). By March 8, 2011, Plaintiff had earned a 3.11 GPA in a Human Services associates degree program at Cuyahoga Community College (Tr. 413).

In regard to daily activities, Plaintiff was a single parent to his daughter, and he had full custody of her since May 2007 (Tr. 367). Plaintiff had a driver's license, and also used public transportation (Tr. 405). Plaintiff reported that his leisure interests included writing poetry, and that he attended church, sang in a choir, and watched television (Tr. 564, 598).

## III.    SUMMARY OF MEDICAL EVIDENCE

In regard to Plaintiff's physical residual functional capacity, on or about November 21, 2005, Plaintiff's right shoulder was injured, when it was hit by a security gate (Tr. 440-441). Plaintiff was treated by Edward Gabelman, M.D., who noted restriction of range of motion and weakness, but that medication had been helpful in controlling Plaintiff's pain (Tr. 516, 523-524). Plaintiff reported ongoing right shoulder pain to his internist, Corattur Natesan, M.D. throughout the relevant period (Tr. 913-955).

On May 2, 2006, John Schaffer, M.D. examined Plaintiff, noting that Plaintiff reported continuing pain and inability to return to work (Tr. 513). MRI evidence was inconclusive (Tr. 513, 535, 537). On physical examination, Dr. Schaffer found mildly restricted range of motion and could not localize tenderness, although he could palpate a lump or spasm on the scapula (Tr. 513). Dr.

4

Schaffer reported an impression of history of rotator cuff injury and surgery, right, stable, and scapulothoracic injury, recent with ongoing symptoms (Tr. 513). Dr. Schaffer recommended an EMG, a consultation with neurosurgery, and a pain center consultation (Tr. 513).

On May 18, 2006, Veterans Affairs Hospital (VA) medical resident Schweta Nagendra found that Plaintiff's shoulders were symmetric with no tenderness on examination of the shoulder joint, full strength, no gross sensory deficits, and good shoulder range of motion (Tr. 589). On August 10, 2006, VA medical resident Andrew Islam found that Plaintiff had point tenderness over his scapula, but intact sensation and right upper extremity motor function (Tr. 572). On October 24, 2006, Dr. Islam found Plaintiff to not be in acute distress with a stable examination, and noted that an MRI of the right shoulder/scapula revealed no abnormality (Tr. 557, 561). On December 28, 2006, a VA nurse practitioner found that Plaintiff had only mildly limited range of motion due to scapulothoracic articulation pain, and no muscle atrophy (Tr. 625).

On January 1, 2007, state agency physician W. Jerry McCloud, M.D. reviewed the record and found Plaintiff capable of performing medium work with only occasional climbing of ladders, ropes, or scaffolds; a restriction to frequent overhead lifting with his right upper extremity; and no limit on left upper extremity lifting (Tr. 605).

On April 27, 2007, Jeffrey Brio, D.O. found on examination that Plaintiff appeared well (Tr. 849). Plaintiff had right-sided neck pain and back pain in spasm, but no decrease in back range of motion (Tr. 849). Aside from reduced grip and wrist extension strength in the right upper extremity (4.5/5), no other radicular changes were noted (Tr. 849). Plaintiff had no decrease in range of motion in the right rotator cuff, and no muscle atrophy (Tr. 849).

On September 12, 2007, Christine Ontko, an occupational therapist, conducted a physical capacity evaluation, and found that Plaintiff demonstrated physical capacities consistent with work

of a light capacity (Tr. 691-693, 852-854). She recommended that he consult with pain management and consider additional reconditioning therapy for his right upper extremity (Tr. 691, 852).

A December 1, 2008 right elbow MRI showed mild to moderate degenerative arthrosis, trace joint effusion, and no bony abnormality (Tr. 971).

On April 1, 2010, Mark Hjelmeland, a physical therapist, conducted a functional capacity evaluation of Plaintiff (Tr. 987). He observed that Plaintiff sat for twenty-eight minutes, stood for twenty minutes, walked for over seventeen minutes, had normal stair climbing tolerance, and normal balance (Tr. 987). Plaintiff did not demonstrate his true lifting maximum because of a ten-pound lifting restriction, but Plaintiff lifted and carried up to that limit (Tr. 987, 989). Plaintiff had below normal gross motor manipulation tolerance and normal fine motor skills (Tr, 988). Plaintiff could bend, squat, crawl, and reach (Tr. 988). Plaintiff had reduced range of motion in the right shoulder, but had normal finger function, strength, lower extremities, and gait (Tr. 991).

On physical examination on May 6, 2010, Bogdan Dumitriu, M.D. noted that Plaintiff had reduced right shoulder range of motion with pain, but non-focal neurological findings (with subjective numbness), full muscle strength, and normal reflexes (Tr. 998). Plaintiff also received a lidocaine injection (Tr. 999).

On July 2, 2010, Plaintiff injured his shoulder while being attacked (Tr. 1005, 1148, 1153). Nevertheless, on July 7, 2010, Kimberly Togliatti-Trickett, M.D. examined Plaintiff and found that he had normal gait, independent squatting and arising function, normal functional spinal range of motion, and normal range of motion in all extremities except in the right shoulder and elbow (Tr. 1006). Plaintiff's joints were also normal, and he had full motor strength in all extremities with normal sensation, hand grasp, manipulation, pinch, and fine coordination (Tr. 1006-1007). Plaintiff had no evidence of muscle spasm or atrophy (Tr. 1007). Dr. Togliatti-Trickett concluded that Plaintiff

6

could stand and walk for four to six hours at a time, lift and carry objects up to twenty to forty pounds on occasion, and had no problem with traveling or handling objects (Tr. 1007). She advised Plaintiff to return to a light or sedentary job, if he returned to employment (Tr. 1007).

On November 12, 2010, Plaintiff underwent surgery to repair a left rotator cuff tear (Tr. 1045-1047, 1095). Surgeon Eric Ricchetti, M.D. indicated that Plaintiff should not lift more than ten pounds with his left arm through March 16, 2011 (Tr. 1052).

In regard to evidence pertaining to his mental residual emotional capacity, on December 22, 2006, clinical psychologist Richard Halas, M.A. examined Plaintiff (Tr. 596). Plaintiff indicated to Mr. Halas that it was primarily his physical health that kept him from working competitively (Tr. 598). Mr. Halas opined that Plaintiff would have marked limitations in relating to others and withstanding stress and pressure associated with most day-to-day work, but no specific limitations in following simple instructions or directions and intact ability to maintain attention (Tr. 599).

On December 28, 2006, state agency psychologist Alice Chambly, Psy.D. found that Plaintiff remained capable of completing a range of tasks (Tr. 703). On February 17, 2007, state agency psychologist Karen Terry, Ph.D. reviewed the record and found that Plaintiff remained capable of completing a range of tasks in a work setting that required him to have no more than minimal and superficial contact with others (Tr. 675).

On December 16, 2009 and December 18, 2009, clinical psychologist Michael Leach, Ph.D. examined Plaintiff at the request of his representatives (Tr. 882-893). Objective testing showed that Plaintiff had a full scale IQ score of 102 and no impairment in attention, focus, and concentration (Tr. 887, 889). Dr. Leach assessed adjustment disorder with mixed anxiety and depressed mood, as well as moderate impairment in daily functioning (Tr. 891). Dr. Leach concluded that Plaintiff had poor frustration tolerance and an inability to handle daily work stress and pressures, and would be

7

moderately impaired in relating to others appropriately in the workplace; mild impairment in understanding, remembering, and following directions; moderate impairment in maintaining concentration, persistence, and pace (Tr. 892-893).

On July 17, 2010, psychiatrist Saroj Brar, M.D. completed a mental functional capacity assessment (Tr. 1039). Dr. Brar indicated that Plaintiff was unemployable with limitations lasting up to nine months, but specified that Plaintiff had moderate limitation in understanding and memory; sustained concentration and persistence; social interaction, and adaption (Tr. 1039). Dr. Brar explained that Plaintiff was unable to work, due to physical problems (Tr. 1040).

Between August 25, 2010 and September 13, 2010, Dianne Zrenner, M.Ed. prepared an individualized vocational evaluation upon referral by the legal clinic representing Plaintiff (Tr. 405). In terms of basic skill testing, Plaintiff scored at the high school level or above (Tr. 407). In dexterity testing, Plaintiff performed in the average range on the Purdue Pegboard Test, except in assembly tasks, and below average on the Minnesota Rate Manipulation Test (Tr. 407-408). Plaintiff exceeded standards in numeric filing; his work sample performance almost met competitive levels in numerical scoring; he worked accurately on sorting mail; and was slow in drafting tasks (Tr. 408). In clerical checking, Plaintiff worked in the average range (Tr. 409). Ms. Zrenner concluded that Plaintiff was below average in manual dexterity, finger dexterity for assembly, bookkeeping worksheets, and measures, but had above average general learning, verbal, spatial, clerical, and form perception; above average reading and arithmetic skills; accurate numerical filing and sorting skills; competitive mail sorting skills; and more than competitive inspection skills (Tr. 409-410). Ms. Zrenner noted that Plaintiff had a tendency towards being tangential, had the perception of being the victim, and had a presentation suggesting questionable judgment in behavior, decision making, and problem-solving (Tr. 410).

In April 2011, Plaintiff's representative prepared a letter for Plaintiff's counselor, John Carroll, LPC, and Mr. Carroll's supervising counselor, James Vernon, LPCC-S, that supported Ms. Zrenner's suggestion that Plaintiff would have problems with interpersonal interactions, and opined that Plaintiff would be unable to complete a full work-week (Tr. 1217-1218).

On August 31, 2010, psychologist Herschel Pickholtz, Ed.D. examined Plaintiff, who told him that his right shoulder kept him from working (Tr. 1018). Dr. Pickholtz concluded, based on his examination, that Plaintiff had no impairment in understanding, remembering, and following instructions; mild impairment in maintaining attention and performing simple repetitive tasks; mild impairment in relating to others; and mild impairment in withstanding day-to-day work activity stresses and pressures (Tr. 1023). Dr. Pickholtz opined that Plaintiff's functioning was only mildly impaired overall (Tr. 1024).

## IV.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits and supplemental security income. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

    4.      If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

    5.      If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence,

but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## **VI.** **ANALYSIS**

Plaintiff raises three issues:

1      Did the Appeals Council consider Plaintiff's request for review of the ALJ's decision?

2.     Does substantial evidence support the ALJ's decision although Plaintiff's prior hearing and prior vacated denial of benefits were not expressly discussed in the ALJ's decision at issue?

3.     Does substantial evidence support the ALJ's residual functional capacity assessment?

In this case, the ALJ decided that Plaintiff had the severe impairments of right shoulder tendonitis, status-post left shoulder rotator cuff tear, and major depressive disorder (Tr. 46-49, Findings 3). The ALJ also found that Plaintiff retained the residual functional capacity to perform light work with occasional climbing (but never climbing of ladders, ropes, or scaffolds); no crawling; frequent reaching and handling (but only occasional overhead reaching); no exposure to hazards; no driving; only superficial interaction with supervisors, coworkers, and/or the general public, and no confrontation, arbitration, negotiation, or selling (Tr. 49, Finding 5). The ALJ concluded that Plaintiff could not perform any of his past relevant work (Tr. 53, Finding 6). However, based upon the vocational expert's testimony, the ALJ found that Plaintiff was capable of making a vocational adjustment to a significant number of jobs in the national economy, and, therefore, was not disabled under the Act (Tr. 53-54, Findings 10-11).

First, as to this decision, Plaintiff argues that the Appeals Council denied his request for review on timeliness grounds, but the Appeals Council in fact considered Plaintiff's request for review on substantive grounds, declining to grant the request because it found no reason under its rules to review the ALJ's decision (Tr. 3-10) (Pl.'s Br. at 1-4). Although the Appeals Council asserted that Plaintiff's request for review was filed late in a December 13, 2012 letter, it was not a denial of the request for review (Tr. 11-12). An examination of the Appeals Council's notice of the denial of Plaintiff's request for review shows that the Appeals Council considered the request under the regulatory standards for its substantive review of ALJ decisions (Tr. 3-10). 20 C.F.R. Sections 404.970, 416.1470. The Appeals Council's notice specifically listed the substantive regulatory standards for its review of an ALJ decision (Tr. 3). Furthermore, the notice explained that the Appeals Council considered the reasons Plaintiff disagreed with the ALJ's decision, as well as additional evidence he submitted to the Appeals Council, and declined to review the decision under its rules (Tr. 3, 5). Hence, the Plaintiff could appeal the ALJ's decision to Federal District Court.

If the Appeals Council had dismissed Plaintiff's request for review on timeliness grounds, the Commissioner would have moved to dismiss Plaintiff's present complaint on the grounds that Plaintiff failed to timely exhaust his administrative remedies. Instead, the Commissioner answered the complaint since Plaintiff had timely challenged the Commissioner's final decision (Dkt. No. 11 at para. 1).

Since the Appeals Council denied a request for review, rather than dismissing it on timeliness grounds, the decision of the ALJ became binding and is the subject to Federal Court review. Hence, Plaintiff's arguments regarding the timeliness of his request for Appeals Council review are moot.

Second, Plaintiff argues that ALJ LeBlanc erred in his description of the posture of the administrative case, by not acknowledging that Plaintiff had a prior hearing in the case before ALJ

Ciccolini, who ultimately vacated his prior decision. However, ALJ LeBlanc did not cause any error by not referencing the prior hearing or decision (Pl.'s Br. at 5-8). ALJ LeBlanc's decision indicates that the Appeals Council ordered a new hearing after an improper dismissal of Plaintiff's case (Tr. 44, 178). The Appeals Council's improper dismissal order referenced by ALJ LeBlanc referred to a dismissal that occurred before ALJ Ciccolini's hearing and decision (Tr. 178-181).

The ALJ's mistaken characterization of the posture of the case is harmless error, and, thus, remand is not required for the ALJ to expressly discuss the prior hearing and decision. Furthermore, Plaintiff's representative made the ALJ aware of the prior hearing (Tr. 68-69, 71) (Pl.'s Br. at 7). In fact, the ALJ acknowledged that he had the audio recording of the prior hearing (Tr. 68-69).

In addition, having the benefit of the additional records submitted after ALJ Ciccolini's hearing, ALJ LeBlanc had enough evidence to make a more accurate assessment of Plaintiff's limitations than ALJ Ciccolini made in his vacated decision (Tr. 47-53, 187-192). Therefore, ALJ LeBlanc was able to assess Plaintiff with a more accurate residual functional capacity than ALJ Ciccolini. ALJ Ciccolini found Plaintiff capable of light work with the ability to change between sitting and standing and no repetitive reaching with his dominant upper extremity (Tr. 189). ALJ LeBlanc also found Plaintiff capable of light work, but found that Plaintiff could climb only occasionally (with no climbing of ladders, ropes, or scaffolds, and no crawling), reach and handle frequently (but with only occasional overhead reaching), could not be exposed to hazards, and could not be required to drive (Tr. 49). In addition, ALJ LeBlanc added comprehensive mental limitations, limiting Plaintiff to only superficial interaction with supervisors, coworkers, and/or the general public (Tr. 49). He also added a limitation on confrontation, arbitration, negotiation, or selling (Tr. 49).

Hence, Plaintiff was not harmed by the characterization of the posture of this case in the ALJ decision at issue here. ALJ LeBlanc indicated at the subsequent hearing that he was aware of the earlier action (Tr. 68-69). Furthermore, ALJ LeBlanc, provided with these additional records,

13

acknowledged that Plaintiff had a broader range of limiting impairments, and, accordingly, assessed a more accurate residual functional capacity that also accounted for Plaintiff's mental limitations (Tr. 46, 49).

The final responsibility for determining a claimant's residual functional capacity is reserved to the Commissioner. 20 C.F.R. Sections 404.1527(d), 416.927(d). Here, the ALJ's residual functional capacity assessment limited Plaintiff to light work with occasional climbing (but no climbing of ladders, ropes, or scaffolds); no crawling; frequent reaching and handling (but only occasional overhead reaching); no exposure to hazards; no driving as part of work duties; only superficial interaction with supervisors, coworkers, or the general public; and no confrontation, arbitration, negotiation, or selling (Tr. 49).

Plaintiff does not challenge these limitations, but argues that the ALJ "intentionally concealed" evidence, specifically the December 2009 psychological evaluation of Dr. Leach (Tr. 882-893), the August/September 2010 individualized vocational evaluation prepared by Ms. Zrenner (Tr. 405-410), and a two-page note on a May 2, 2006 examination by consulting orthopedic physician Dr. Schaffer (Tr. 513-514) (Pl.'s Br. at 8-10). While the ALJ did not expressly discuss these reports in the opinion, the ALJ could not conceal them, since they are included in the administrative record and were included in exhibits listed on the ALJ decision's list of exhibits (Tr. 56-64, 405-410, 513-514, 882-893).

The absence of discussion of these reports in the decision does not require remand, particularly since none of these sources were treating physicians. An ALJ need not discuss every piece of relevant medical evidence in a decision for the decision to be supported by substantial evidence. *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F.App'x 521, 526 (6th Cir. 2006).

Actually, Dr. Schaffer's physical report is not inconsistent with the ALJ's ultimate finding that Plaintiff retained the ability to perform a modified range of light work with only occasional overhead

14

reaching. Although Dr. Schaffer found that he could palpate Plaintiff's scapula to generate a lump or spasm, Dr. Schaffer also discussed that Plaintiff's MRI imaging was inconclusive, and that Plaintiff had only mildly restricted range of motion (Tr. 513).

When considered with other evidence of record, Dr. Schaffer's report constitutes part of the substantial evidence supporting the ALJ's assessment. Other examples in the record fully support Dr. Schaffer's conclusions (Tr. 557, 561, 589, 691-693, 849, 852-854, 998, 1006-1007). Together, all of this evidence supports the ALJ's assessment that Plaintiff could perform a modified range of light work.

Also, Dr. Leach's report generally is not inconsistent with the ALJ's finding that Plaintiff could perform unskilled jobs with only superficial interaction with supervisors, coworkers, and/or the general public, and no confrontation, arbitration, negotiation, or selling (Tr. 49). Dr. Leach concluded that Plaintiff had poor frustration tolerance and an inability to handle daily work stress and pressures, but that he would be moderately impaired in relating to others appropriately in the workplace; mildly impaired in understanding, remembering, and following directions; and only moderately impaired in maintaining concentration, persistence, and pace (Tr. 892-893).

Consistent with Dr. Leach's report that does not support a finding a disability, Ms. Zrenner also did not assess Plaintiff with work-preclusive limitations (Tr. 409-410). Ms. Zrenner opined that Plaintiff revealed questionable judgment and that referral information indicated difficulty relating to others and poor frustration tolerance, but she also found that, in terms of basic skill testing, Plaintiff scored at the high school level or above (Tr. 407, 410). Plaintiff worked accurately on sorting mail, worked in the average range in clerical checking, had above average general learning, verbal, spatial, clerical, and form perception; had above average reading and arithmetic skills; had accurate numerical filing and sorting skills; had competitive mail sorting skills; and had more than competitive inspection skills (Tr. 408-410).

To the extent that Dr. Leach's assessments that "[i]t is unlikely that [Plaintiff] would be able to relate to others in the workplace," "[i]t is unlikely that [Plaintiff] would be able to handle the stresses and pressures of daily work," and "[Plaintiff] has a poor frustration tolerance to stressors. . .," and Ms. Zrenner's assessments that Plaintiff had questionable judgment, difficulty relating to others in the workplace, and poor frustration tolerance, are not accounted for by the ALJ's assessment limiting Plaintiff to only superficial interaction with supervisors, coworkers, or the general public, and no confrontation, arbitration, negotiation, or selling, they are not supported by the evidence in the record as a whole (Tr. 410, 892-893). *See,* 20 C.F.R. Sections 404.1527(c)(3), (4); 416.927(c)(3), (4); SSR 06-03p, 2006 WL 2329939 at *4 (Aug. 9, 2006). As a matter of fact, Dr. Leach's observations do not support disabling limitations. He observed that Plaintiff was punctual, cooperative, polite, persistent, and articulate, with organized thought process that was coherent and relevant to conversation (Tr. 886). Dr. Leach's overall assessment of Plaintiff's functioning described him as only moderately impaired (Tr. 891). Furthermore, Ms. Zrenner found that Plaintiff required redirection and rambled, but also found that Plaintiff was cooperative and put forth good effort (Tr. 406). Plaintiff's college performance also contradicts his claims of inability to handle daily workplace pressures, since he had a 3.11 GPA (Tr. 413). Therefore, to the extent that elements of Dr. Leach's and Ms. Zrenner's assessments contradict the ALJ's comprehensive mental residual functional capacity, those elements are not supported by substantial evidence.

There is additional evidence in the record that supports the ALJ's mental residual functional capacity assessment. On August 31, 2010, Dr. Pickholtz examined Plaintiff, and concluded that he had no impairment in understanding, remembering, and following instructions; mild impairment in maintaining attention and performing simple repetitive tasks; mild impairment in relating to others; and mild impairment in withstanding day-to-day work activity stresses and pressure (Tr. 1023). Dr. Pickholtz's findings, and the ALJ's mental residual functional capacity, are also substantiated by

16

Plaintiff's extensive activities, which included taking four college classes in a term, and taking care of his daughter (Tr. 73, 78).

In conclusion, substantial evidence supports the ALJ's assessment that Plaintiff retained the residual functional capacity to perform light work with occasional climbing (but no climbing of ladders, ropes, or scaffolds); no crawling, frequent reaching and handling (but only occasional overhead reaching); no exposure to hazards; no driving as part of work duties; only superficial interaction with supervisors, coworkers, or the general public; and no confrontation, arbitration, negotiation, or selling (Tr. 49).

## **VII.** **CONCLUSION**

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform a significant number of jobs in the economy, and, therefore, was not disabled. Hence, he is not entitled to DIB and SSI.

Dated: July 18, 2014                    */s/George J. Limbert*
                                          GEORGE J. LIMBERT
                                          UNITED STATES MAGISTRATE JUDGE